IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3134-FL

| | |
|---|---|
| SHELBY JEAN WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| V. POETTER, DR. CROSS, NURSE WHITTEN, and LT. SEWARD[1], | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants Cross and Poetter's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 31). The motion has been fully briefed and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, filed the instant action pursuant to 42 U.S.C. § 1983, alleging defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment to the United States Constitution. On February 10, 2020, the court conducted its frivolity review of plaintiff's complaint pursuant to 28 U.S.C. § 1915, and allowed the action to proceed against defendants Poetter, Cross, and Seward. On May 14, 2020, the court granted plaintiff's motion to amend and allowed plaintiff to proceed against defendant Whitten. On June 10, 2020, defendants Poetter and Cross filed the instant motion to dismiss, arguing that

---

[1] On February 10, 2020, the court dismissed plaintiff's claims against formerly-named defendants Warden Royster and Dr. Dunston.

plaintiff failed to state a claim for relief against defendants Poetter and Cross. The motion was fully briefed.

## STATEMENT OF THE FACTS

Plaintiff's factual allegations are set forth below in relevant part:

> In early 2015 I started having chest pains and tiredness and I complained repeatedly during medical appointments and I requested treatment. I was told it was from my mitr[al] valve prolapse. I continued to complain until Dr. V. Poetter ordered an EKG on November 21, 2015 and an Echocardiogram on December 17, 2015.[2] At my next appointment with Dr. Poetter, she could not find my Echocardiogram and EKG test results. My next appointment was with Dr. Wilson. He went to check on my Echocardiogram and he came back and said I had to see Dr. Poetter to get my test results. My next appointment with Dr. Poetter, she said she would check and let me know what my Echocardiogram test results were. She never called me back. The last time I saw Dr. Poetter before my embolic stroke, she said my Echocardiogram was normal and my EKG was normal. I received no medical treatment on any of these appointments. I continued to have chest pains and they were getting worse.
>
> I saw Dr. Cross and requested treatment for my chest pains. Dr. Cross ordered another EKG. Dr. Cross gave me no indication of what was wrong with my heart. In all my medical appointments I complained about my chest pains to Dr. Wilson, Dr. Umecee, Dr. Cross, and Dr. Poetter and at no time did any of these doctors say anything about what was wrong with my heart or give me any medical treatment.
>
> On July 5, 2016 at 4:00AM I got up to get my insulin. I went completely blind in the shower. I kept feeling something hitting my eyes. After a few minutes part of my vision returned. I declared a medical emergency at 4:30AM on July 5, 2016….
>
> On July 6, 2016 intake took me to the eye doctor…. The eye doctor did some tests and came back and told me I had all the classic [symptoms] of having a stroke. The eye doctor sent me to Rex Hospital.
>
> On July 6, 2016 Rex Hospital did an MRI and all kinds of tests. Dr. Willis Wu cardiac surgeon and implant surgeon Dr. Curtis Anderson came and told me my aorta valve had a flap of blood clots (embolisms) in the opening of my aorta valve. I needed immediate open heart surgery to replace my aorta valve….

---

[2] Plaintiff also attached an exhibit to the complaint consisting of a record from an administrative grievance she filed regarding the issues raised in her complaint. The exhibit indicates that Poetter ordered an EKG on November 21, 2015, and an Echocardiogram on December 17, 2015. Moreover, plaintiff had an appointment with Cross on May 10, 2016, and plaintiff's findings were notable so that an urgent UR was submitted for Cardiology and Ophthalmology. See (DE 1-1) 1.

2

> On July 18, 2016 I had open heart surgery replacing my aortic valve with a pericardial tissue valve Model 3000 serial 4803225 size 21mm with implanting physician Dr. Curtis Anderson and Dr. Willis Wu. Dr. Wu told me my heart problems would have shown up years earlier on an Echocardiogram and would have shown up on the EKG's they did here. I did not have any vision problems other than near-sightedness and minor retinopathy. All the damage done to my eyes were from the embolisms hitting my brain and affecting my eyes. The blood vessels were weakened from the embolic stroke and my bad aorta valve. I was told at NCCIW during open heart surgery I died twice on the operating table….
>
> Dr. Poetter knew of my heart condition at least seven (7) months prior to my embolic stroke and was grossly deficient in my medical care. Dr. Cross had access to my Echocardiogram and still did not treat me….

(DE 1 ¶ V).

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Additionally, the court need not "accept as true [factual] allegations that contradict matters properly subject to judicial notice or by exhibit." See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

B.   Analysis

Plaintiff alleges defendants Poetter and Cross were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the

4

official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

Plaintiff's complaint does not allege a viable claim for deliberate indifference to serious medical needs against defendants Poetter and Cross. Assuming (without deciding) that plaintiff suffers from a serious medical need, plaintiff has not alleged that defendants Poetter and Cross disregarded her medical need. See Shakka, 71 F.3d at 166. Plaintiff alleges Poetter ordered an EKG and an Echocardiogram in response to her complaints of chest pains and fatigue. See (DE 1) 7. Poetter reviewed plaintiff's test results and informed plaintiff that her "Echocardiogram was normal and [her] EKG was normal." (DE 1) 7. Plaintiff alleges Cross ordered an additional EKG in response to her complaints of chest pains. See (DE 1) 8. Moreover, plaintiff's exhibit shows that Cross found her results notable and submitted an urgent UR for Cardiology and Ophthalmology. See (DE 1-1) 1. Plaintiff's allegations appear to be a disagreement with the treatment provided. See Wright, 766 F.2d at 849. At most, plaintiff alleges defendants were negligent in diagnosing or treating her medical condition, which does not constitute deliberate

5

indifference.[3] See Estelle, 429 U.S. at 105–08; Jackson, 775 F.3d at 178; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Accordingly, defendants' motion to dismiss for failure to state a claim is granted.[4]

## CONCLUSION

Based on the foregoing, the court GRANTS defendants Cross and Poetter's motion to dismiss (DE 31). Plaintiff's claims against defendants Cross and Poetter are DISMISSED without prejudice. The case remains active against the remaining defendants.

SO ORDERED, this the 16th day of March, 2021.

LOUISE W. FLANAGAN
United States District Judge

---

[3] Further, plaintiff has not brought a proper medical negligence claim under state law pursuant to North Carolina Rule of Civil Procedure Rule 9(j), and therefore the court will not construe the claim as such.

[4] In her response to defendants' motion to dismiss, plaintiff attempts to assert new claims and add factual allegations that are not part of the original complaint. See (DE 40). These claims and allegations were not raised in plaintiff's complaint, and plaintiff cannot amend the complaint by alleging new claims in her response. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008); United States v. Jones, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. 1988).